IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALTON CROMARTIE, | ) | CASE NO. 1:08CV1711 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ZOUHARY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| STUART HUDSON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Alton Cromartie ("Cromartie") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254 on July 17, 2008.  Cromartie is in the custody

of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of

sentence in the case of *State of Ohio vs. Cromartie*, Case No. 06CR0003 (Medina

County 2006).  For the reasons set forth below, Cromartie' petition should be dismissed.

I.

The state appellate court reviewing Cromartie' conviction found the following

facts to be relevant to his case:

> {¶ 2} On January 1, 2006, Gregory J. Sulitis was assaulted in the garage and
> front yard of his parents' home in Brunswick, Ohio.  As Mr. Sulitis walked through
> the attached garage, he noticed condensation on the windows of his Jeep
> Cherokee and that a corner of the tarp covering the cargo storage area of the
> vehicle was askew.  Mr. Sulitis opened the door to the cargo area and found a
> man with a gun concealed inside.  A struggle ensued, and Mr. Sulitis's mother
> joined the fray when she heard her son's screams.  The assault continued as Mr.

Sulitis and the assailant moved to the front yard, where the assailant repeatedly struck Mr. Sulitis over the head with a blunt object before fleeing the scene, leaving Mr. Sulitis bloodied on the ground.

{¶ 3} Mrs. Sulitis called 911, and the Brunswick police arrived on the scene shortly thereafter.  Mr. Sulitis identified his assailant as Defendant, with whom Mr. Sulitis had been in a turbulent romantic relationship in 2005.  He and Mrs. Sulitis provided a physical description of Defendant.  Police recovered parts of a semiautomatic handgun in the Sulitises' yard and established a search perimeter based on the information they provided.  Defendant eluded the search for approximately five hours, evading foot patrols, a canine search unit, and heat-seeking equipment as he fled on foot through the neighborhood.  Brunswick police apprehended Defendant after receiving a call related to a suspected robbery at a Walgreens drug store.

{¶ 4} Defendant was indicted on charges of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree; violating a protection order in violation of R.C. 2919.27(A) and (B)(3), felonies of the fifth degree; intimidation in violation of R.C. 2921.03(A) and R.C. 2921.04(B), felonies of the third degree; and retaliation in violation of R.C. 2921.05(A) and (B), felonies of the third degree.  Each charge carried a firearm specification pursuant to R.C. 2941.145.

{¶ 5} In anticipation of trial, the State filed notice of its intention to introduce other acts evidence consisting of testimony related to acts of actual or threatened violence perpetrated by Defendant against men with whom he had been in intimate relationships.  Defendant responded in opposition and moved the trial court in limine to exclude all such evidence pursuant to Evid.R. 401, 403, and 404(B).  The trial court heard arguments and denied Defendant's motion immediately prior to trial.

*State v. Cromartie*, 2008 WL 216352, at *1-*2 (Ohio App. Jan 28, 2008).

On October 11, 2006, Cromartie filed a motion that he be allowed to represent himself *pro se*.  The court failed to respond to this motion.  Trial began on October 28, 2006 with Cromartie represented by counsel.  When defense counsel told the court that Cromartie wanted to proceed *pro se*, the court advised Cromartie of his right to proceed without counsel and warned of the disadvantages of doing so.  Cromartie then executed a waiver of counsel.  The court accepted the waiver but instructed Cromartie's former

2

attorney to attend as stand-by counsel.  Cromartie proceeded *pro se* until he indicated

to the court that he wanted his former attorney to represent him again.  When Cromartie

changed his mind yet again, asking that he be allowed to proceed *pro se* again, the

court denied his request.

Over Cromartie's objection, the state presented the testimony of David Gregory

("Gregory"), an ex-lover of Cromartie's.  Gregory testified that Cromartie assaulted him

after he ended their relationship.  The court also allowed testimony from a law

enforcement officer who responded to Cromartie's assault on Gregory and from law

enforcement officers from Wheaton, Illinois, where Cromartie Defendant was convicted

of two felonies related to his conduct toward another former lover, Chris Cutrone.

A jury found Cromartie guilty as charged.  On November 15, 2006, the court

sentenced Defendant to consecutive prison terms for aggravated burglary and felonious

assault and to concurrent terms for all other counts.  The cumulative sentence was

nineteen years.

Cromartie, represented by new counsel, filed a timely notice of appeal.  In his

appellate brief, he asserted four assignments of error:

Assignment of Error I:

> The trial court erred when, over defense objections, it admitted other acts testimony in violation of R.C. 2945.59, Evid. R. 404(B), and Mr. Cromartie's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

Assignment of Error II:

> The trial court deprived the appellant of his Sixth and Fourteenth Amendment right to self-representation.

Assignment of Error III:

3

The appellant was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Assignment of Error IV:

State misconduct during appellant's trial denied his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(Punctuation altered from the original.)  Cromartie filed an amended brief *pro se* on June 18, 2007.  On June 25, 2007, Cromartie filed a reply brief through counsel, then filed a revised reply brief through counsel on July 3, 2007.  On January 28, 2008, the state appellate court overruled Cromartie's assignments of error and affirmed the judgment of the trial court.

Cromartie timely appealed the state appellate court's decision to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Cromartie raised four propositions of law:

Proposition of Law No. I:  The trial court erred when, over defense objection, it admitted other acts testimony in violation of R.C. 2945.59 and Evid. R. 404(B) under Article I, Section 16 of the Ohio Constitution and the 5th and 14 [sic] Amends. to the U. S. Constitution.

Proposition of Law No. II:  The trial court committed reversible error when it allowed the admission of other acts from 1998 from the State of Florida under Rule 404(B) which was subject of counts of acquittal and without conducting any reliability test, thus violating Defendant's 5th and 14th Amendments to the U.S. Constitution.

Proposition of Law No. III:  Trial court erred when it failed during trial to inquire into Appellant's objection with trial counsel and deprived Appellant of his 5th, 6th and 14th Amends. to the U.S. Constitution right to self represent.

Proposition of Law No. IV:  State misconduct during Appellant's trial denied his rights under the 5th, 6th and 14th Amends. to the U, S. Constitution.

(Punctuation altered from the original.)  On June 18, 2008, the Ohio Supreme Court

4

declined jurisdiction and dismissed the appeal as not involving any substantial

constitutional question.

On September 19, 2007, during the pendency of his direct appeal, Cromartie

filed in the trial court a petition for postconviction relief.  In his brief in support of his

petition, Cromartie asserted five claims:

> **CLAIM ONE:**  The trial court erred and deprived Defendant-Appellant of
> procedural due process and due process of law guaranteed by the V, VI, and XIV
> Amendments of the Constitution of the U.S. and the State of Ohio in failing to
> conduct a 404(b) analysis prior to admitting, over Defendant's objection, other
> acts evidence.  Erroneous admission is violative of the Federal Constitutional
> Right to a presumption of innocence and other due process.

> **CLAIM TWO:**  Trial court erred and deprived Defendant-Appellant of due
> process of law and a fair trial guaranteed by the V, VI, and XIV Amendments of
> the United States Constitution and Art. I, Section 16 of the Ohio Constitution by
> failing to comply with the collateral estoppel doctrine in regard to the admission of
> other acts evidence under 404(b) from an acquitted 1998 trial of the State of
> Florida.

> **CLAIM THREE:**  3. The trial court erred and violated Defendant-Appellant's
> Constitutional rights under the VI and XIV Amendments Right to Self-
> Representation [sic] when it interrupted trial proceedings and alleged that
> Defendant-Appellant was engaging in hybrid representation and forced
> Defendant-Appellant to relinquish self-representation.

> **CLAIM FOUR:**  The trial court erred and violated Defendant-Appellant's due
> process of law guaranteed by the V, VI, and XIV Amendments of the Constitution
> of the U.S. and Art. I, Section 16 of the Ohio Constitution by depriving Defendant-
> Appellant of procedural due process in failing to conduct a 404(b) analysis of
> other acts testimony and evidence of eight State's witness [sic] and that of
> Defendant-Appellant whereby this significant amount of other acts testimony
> deprived Defendant-Appellant of a fair trial.

> **CLAIM FIVE:**  Judicial and prosecutorial misconduct were rampant and violated
> Defendant'-Appellant's due process of law guaranteed under the V and XIV
> Amendments of the United States and Ohio Constitutions when the trial court
> abused its discretion by allowing the admission of other acts evidence which the
> Defendant-Appellant had no pretrial notice. Erroneous admission is also violative
> of federal constitutional rights and other due process.

Cromartie raised five additional claims in a motion for discovery of grand jury minutes,

filed in the trial court on September 24, 2007:

> **CLAIM SIX:**  Trial court erred and committed judicial misconduct violating
> Defendant-Appellant's due process as guaranteed by the V, VI and XIV
> Amendments of the U.S. Constitution and Article I, Sections 1 and 16 of the Ohio
> Constitution when it refused to rule on motions, hold hearings on the record, or
> journalize its rulings, thus creating an inadequate record.  This error is also
> violative of Defendant-Appellant's Federal Constitutional Rights.

> **CLAIM SEVEN:**  Trial court erred and committed judicial misconduct when it
> received a motion of pro se representation from Defendant-Appellant and a
> motion from defense counsel that it was withdrawing from the case yet the trial
> court still forced defense counsel to conduct trial depositions against both
> Defendant-Appellant and Defense Counsel's will without addressing either
> motion.  This violated Defendant-Appellant's due process and right to a fair trial
> under the V, VI, and XIV Amendments of the U.S. Constitution.

> **CLAIM EIGHT:**  Prosecutorial misconduct deprived Defendant-Appellant of due
> process of law guaranteed by the I, IV, V, and XIV Amendments of the U.S.
> Constitution and Article I, Sections 1 and 16 of the Ohio Constitution when an
> intentional abuse of process took place subsequent to Defendant-Appellant
> posting of bail.

> **CLAIM NINE:**  Prosecutorial misconduct during trial on behalf of Dean Holman
> violated Defendant's due process of law guaranteed by the V, VI, and XIV
> Amendments of the U.S. Constitution and Article I, Sections I and XVI of the Ohio
> Constitution.

> **CLAIM TEN:**  Defendant-Appellant was denied due process of law guaranteed
> by the V, VI and XIV Amendments of the U.S. Constitution and Article I, Section
> 16 of the Ohio Constitution when Defendant-Appellant was both mentally and
> physically incompetent at trial depositions.

> **CLAIM ELEVEN:**  Prosecutorial misconduct during trial on cross-examination of
> the complaining witness, Gregory Sulitis, whereby Mr. Holman, prosecutor,
> interrupted Mr. Morse's questioning of Mr. Sulitis in an effort to assuage the trial
> court to remove evidence and disallow questioning of this evidence claiming it
> was a forged document.

On October 3, 2007, Cromartie moved to further amend his petition by adding an

additional claim:

> **CLAIM TWELVE:**  Ineffective assistance of counsel took place when trial counsel failed to investigate Defendant's case, file pre-trial motions, or make objections during trial forfeiting Defendant's appellate rights, and when it improvised a theory as trial progressed therefore violating Defendant's V, VI, and XIV Amendments of the United States Constitution and Article I, Section 16 of the Ohio Constitution.

Cromartie moved yet again on October 11, 2007 to add one other claim:

> **CLAIM THIRTEEN:**  Defendant-Appellant was severely harmed and prejudiced by the trial court and the prosecutor, Dean Holman, due to a conflict of interest which deprived defendant-appellant of due process of law and his right to a fair trial in violation of the V, VI, and XIV Amendments of the U.S. Constitution.

On October 19, 2007, Cromartie filed a motion to amend his twelfth claim.  On October 25, 2007, Cromartie moved to amend his petition by adding the following claim:

> **CLAIM FOURTEEN:**  Defendant-Appellant was denied due process of law when the Court failed to dismiss additional counts of the indictment.  Defendant-Appellant's IV, V, VI, and XIV Amendments of the U.S. Constitution were violated.  This is a violation of Defendant-Appellant's speedy trial rights.

On November 8, 2007, the trial court dismissed Cromartie's first thirteen claims as barred by *res judicata*.[1]

Cromartie timely appealed the dismissal of his petition for postconviction relief to the state appellate court.  Cromartie's revised brief in support of his appeal raised the following five assignments of error:

> Assignment of Error I:
>
> > The trial court erred by dismissing the Petitioner's petition on the basis of res judicata thereby violating Appellant's right to due process under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

---

[1]  The court ignored Cromartie's motion to add a fourteenth claim, a motion made after the briefing on the state's motion to dismiss the petition.

7

Assignment of Error II:

> The trial court erred and abused its discretion when it denied Appellant an evidentiary hearing in violation of his rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution when Appellant presented to the trial court supporting affidavits and documentary evidence which include evidence dehors the record.

Assignment of Error III:

> The trial court erred and abused its discretion when it sua sponte summarily dismissed Petitioner's petition on the basis of res judicata when the State did not raise res judicata as an affirmative defense in violation of Appellant's Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

Assignment of Error IV:

> The trial court erred in granting summary judgment against Appellant in violation of Appellant's rights under the Fifth, Sixth, Eighth, Fourteenth Amendments to the U.S. Constitution.

Assignment of Error V:

> The trial court erred and abused its discretion because the findings of fact and conclusions of law contained in the Court's final order and judgment entry of November 8, 2007 were based on unreasonable determination of the underlying facts in light of the evidence presented in the affidavits and exhibits accompanying the postconviction petition and applicable law in violation of Appellant's due process rights under the Ohio and U.S. Constitution [sic].

On January 2, 2009, the state appellate court affirmed the judgment of the trial court.

On May 9, 2008, Cromartie filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B). Cromartie alleged ineffective assistance of appellate counsel because counsel failed to raise the following assignment of error on direct appeal:

> The trial court committed reversible error when it refused to inquire into Defendant's pro se motion and defense counsel's motion to withdraw prior to trial

8

depositions violating Appellant's 5th, 6th, and 14th Amends. to the U.S. Const. (Capitalization altered from the original.)  On June 6, 2008, the state appellate court dismissed Cromartie's application as untimely and not setting forth cause for the untimely filing.  Cromartie filed a motion for reconsideration on June 16, 2008, and the appellate court denied this motion on July 9, 2008.  Cromartie then filed a motion for delayed reconsideration of the denial of his application to reopen.  On September 8, 2008, the appellate court denied this motion.

Cromartie filed a  timely a notice of appeal of the state appellate court's denial of his application to reopen his direct appeal.  In his memorandum in support of jurisdiction, Cromartie asserted a single proposition of law:

> The Court of Appeals violated Appellant's due process and equal protection under the 5th and 14th Amendments to the U.S. Constitution and violated Ohio Appellate Rule 3 when it ruled it lacked jurisdiction to hear Appellant's 26(B) application for reopening on the grounds it was untimely.

On September 10, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Cromartie moved for reconsideration, and the Ohio Supreme Court denied this motion on October 29, 2008.

On July 17, 2008, Cromartie filed in this court a petition for a federal writ of habeas corpus.  Cromartie's petition raises three grounds for relief:

> GROUND ONE:  The admission of "other acts" evidence was in violation of Federal Rule 404(B) and the Fourteenth Amendment to the U.S. Constitution.

> GROUND TWO:  Petitioner was denied his Sixth and Fourteenth Amendment rights to Self-Representation.

> GROUND THREE:  Government misconduct denied Appellant his rights under the 5th, 6th, and 14th Amendments.

9

On October 28, 2008, the court granted Cromartie's motion to amend his petition by

adding three grounds for relief:

> GROUND FOUR:  Petitioner was denied his Sixth and Fourteenth Amendment
> right to self-representation when the court would not enquire into his motion for
> pro se representation of which was filed [sic] prior to the scheduling of trial and
> the scheduling of trial depositions.
>
> GROUND FIVE:  Government misconduct denied Petitioner his rights under the
> Fifth and Fourteenth Amendments to the U.S. Constitution and Federal Rule 607,
> 608, 609, and 611(B) when the State cross examined Petitioner on prior criminal
> offenses and offered no conviction and when the Court refused to take corrective
> action.
>
> GROUND SIX:  Petitioner's right to confront and cross examine State's
> witnesses against him was barred under the confrontation clause and in violation
> of Federal Rule 801, 802, 803, and 805 and was also in violation of Petitioner's
> Sixth Amendment rights of the U.S. Constitution.

Respondent filed an Answer/Return of Writ on February 6, 2009.  Doc. No. 18.

Cromartie filed a Traverse on March 19, 2009. Doc. No. 24.  Then, upon Cromartie's

motion, the court struck Cromartie's amended petition on September 8, 2009.  Doc. No.

53.  Thus, the original petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Medina County, Ohio sentenced Cromartie.

Cromartie filed his writ of habeas corpus in the Northern District of Ohio and raises

claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice
> thereof, the district courts and any circuit judge within their respective
> jurisdictions. . . . Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court of a State
> which contains two or more Federal judicial districts, the application may be filed
> in the district court for the district wherein such person is in custody or in the
> district court for the district within which the State court was held which convicted

10

and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Medina County, located in the Northern District of Ohio, is within this court's geographic jurisdiction.  This court has jurisdiction over Cromartie' petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Cromartie's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v.*

11

*Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Cromartie has no state remedies available for his claims.  Because no state remedies remain available to him, Cromartie has exhausted state remedies.

D.  *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice

12

as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See  McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent does not contend that Cromartie has defaulted any of his grounds for relief.

13

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered

the standard of review that a federal court must apply when deciding whether to grant a

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to clearly established federal law or was based

on an unreasonable determination of the facts in light of the evidence.  *Carey v.*

*Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362,

379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not

its dicta, and the law must be clearly established at the time of the petitioner's

conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

14

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano,* 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Cromartie's grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.    Whether the admission of "other acts" evidence violated Cromartie's right to due process

Cromartie contends in his first ground for relief that the admission of testimony regarding prior incidents connected with lovers in Florida and Illinois without proper determinations necessary to admit such evidence or properly instructing the jury regarding the use of such evidence violated his right to due process.[2]  Cromartie also argues that some of this evidence was hearsay and improperly stated the facts of the

---

[2]  Cromartie also argues, in this and other grounds for relief, that the admission of this evidence violated the "Federal Rules."  The Federal Rules of Evidence and the Federal Rules of Criminal Procedure apply only to federal litigation.  Neither has any application to a case tried in state court.  Thus, Cromartie's claim that state trial procedures violated the "Federal Rules" have no relevance in determining whether Cromartie is entitled to habeas relief.

Florida evidence.[3]    Respondent replies that the decisions to admit evidence during

Cromartie's trial are not a proper basis upon which to grant habeas relief.

Federal courts generally do not grant habeas relief for alleged errors arising

under state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . .  [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  However, an error of state law may

serve as a basis for habeas relief when the petitioner was denied fundamental fairness

in the trial process.  *Id.*; *see also Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348,

1354 (6th Cir. 1993).  An error of state law so severe as to deny fundamental fairness

offends the due process clauses of the Fifth and Fourteenth Amendments.  *See United

States v. Agurs*, 427 U.S. 97, 107 (1976); *see also In re Murchison*, 349 U.S. 133, 136

(1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").

Not all violations of the right to a fair trial, however, entitle a petitioner to habeas

relief.  In *Brecht v. Abrahamson,* 507 U.S. 619 (1993), the Supreme Court held that a

court considering a collateral review of a conviction should weigh constitutional "trial

error"[4] by (1) evaluating the error in the context of the entire record; (2) asking whether

---

[3] Cromartie also asserts that the prosecutor improperly summarized the "other acts" evidence in closing arguments.

[4] According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the

the trial error had a substantial and injurious effect on the jury's verdict, and (3) grant relief only if there is grave doubt about whether the error was harmless.  *id.* at 638.  A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict.  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

As respondent correctly observes, *Bugh v. Mitchell*, 329 F.3d 496, 512-513 (6th Cir. 2003), teaches that because the United States Supreme Court has never held that admission of "other acts" evidence in state proceedings is a constitutional violation, the admission of such evidence is not "contrary to" established law pursuant to the AEDPA. Consequently, habeas relief is not possible merely due to the admission of "other acts" evidence.

Moreover, even if Cromartie could demonstrate violations of state evidentiary law sufficient to constitute a due process violation, he would be unable to obtain habeas relief because he cannot show that he was prejudiced by the alleged error.  The evidence presented at trial included threatening messages that established intent; the rental of a Dodge Stratus and TruFone records that put Cromartie in the vicinity of the crime; the testimony of two eyewitnesses to the attack; and clothing and other physical

---

context of other evidence presented in order to determine [the effect it had on the trial]."  *Id.,* at 307-308.  At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.,* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process.    See *id.,* at 309-310.  Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht*, 507 U.S. at 629-30.

17

evidence belonging to Cromartie left at the scene of the crime, including evidence tied to Cromartie by DNA testing.  Thus, the evidence against Cromartie was so overwhelming that no amount of "other acts" evidence could have made any difference in the outcome.

As Cromartie is fails to demonstrate any state court decision contrary to a holding of the Supreme Court or demonstrate prejudice as a result of the alleged violations, Cromartie's first ground for relief should be dismissed.

B.      *Whether the court denied Cromartie's right to represent himself*

Cromartie asserts in his second ground for relief that when the court denied his final request to represent himself it deprived him of his right of self-representation. Respondent asserts that the court did not deny Cromartie any right protected by the Constitution.

Although the Supreme Court recognized a right to self-representation in *Faretta v. California*, 422 U.S. 806 (1975), that right has limits.  In particular, the right to represent oneself must be made timely.  In recognizing Faretta's right to serve as his own counsel, the Supreme Court noted that he had requested self-representation "weeks before the trial . . . ."  *Faretta*, 422 U.S. at 835.  A court may properly deny a motion to represent oneself when trial is already in progress, *United States v. Martin*, 25 F.3d 293, 296 n.3 (6th Cir. 1994), or even after the role of jurors has been called but trial has not yet commenced, *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir. 1986).

The state appellate court reviewing the corresponding state claim on direct appeal made the following findings of fact and conclusions of law:

{¶ 21} Criminal defendants enjoy the constitutional right to self-representation at

18

trial provided that the right to counsel is knowingly, voluntarily, and intelligently waived after sufficient inquiry by the trial court. *State v. Johnson,* 112 Ohio St.3d 210, 2006-Ohio-6404, at ¶ 89. Assertion of the right to self-representation must be clear and unequivocal. *State v. Ahmed,* 103 Ohio St. 3d 27, 2004-Ohio-4190, at ¶ 107, citing *United States v. Frazier-El* (C.A.4 2000), 204 F.3d 553, 558.  It must also be timely made, and self-representation may be properly denied when requested in close proximity to trial or under circumstances indicating that the request is made for purposes of delay or manipulation. *State v. Vrabel,* 99 Ohio St.3d 184, 2003-Ohio-3193, at ¶ 50; *Frazier-El,* 204 F.3d at 559.  When a defendant's vacillation on assertion of the right creates ambiguity, self-representation may be denied:

"The requirement that a request for self-representation be clear and unequivocal also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation.  A defendant who vacillates at trial places the trial court in a difficult position because it 'must "traverse . . . a thin line" between improperly allowing the defendant to proceed *pro se,* thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation.'  In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation.

"At bottom, the * * * right to self-representation is not absolute, and 'the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.'"  (Internal citations omitted.) *Frazier-El,* 204 F.3d at 559.

See, also, *Vrabel,* 2003-Ohio-3193, at ¶ 49-53 (holding that a defendant who vacillated between assertion of the right to self-representation and representation by counsel and who finally asserted the right to self-representation on the day that presentation of the State's case-in-chief was scheduled to begin did not properly invoke the right.)

{¶ 22} As described in *Frazier-El* and *Vrabel,* the record in this case indicates that Defendant vacillated on the issue of self-representation after trial began.  He asserted the right to self-representation on the first day of trial after the jury was impaneled.  The trial court conducted a thorough colloquy with Defendant, granted the request, and appointed standby counsel.  During the direct examination of the third witness called by the State, after the trial court admonished Defendant and standby counsel to avoid hybrid representation, Defendant asserted his right to counsel.  Defendant requested self-representation again during the State's direct examination of Mr. Sulitis.  At that point, the trial court denied Defendant's request:

19

> "I am not going to permit [Defendant] to proceed by himself.  He has an attorney. We're now into the third day of trial, and I'm going to require that counsel continue in his retained role as counsel for [Defendant]. And here's the reason why.
>
> " * * * What is a right of this Defendant can't be used as a bludgeon to make trial impossible.  And trial in this case has become nearly impossible, as a practical matter, based on what's happened here.
>
> "And to review again, after the first round of lawyers had been hired and dismissed on the eve of trial, we had a situation in which [Defendant] became unhappy with this counsel, dismissed his counsel, decided he wanted counsel again, became unhappy with the same attorney, dismissed the attorney, decided he wanted to proceed with that attorney again, and now he wants to dismiss that same attorney.  This is all within four days of this case.
>
> " * * * [W]hat I'm struggling with is what I believe is strategy on the part of the Defendant to make this trial impossible."
>
> {¶ 23} We agree with the trial court that vacillation and manipulation by a defendant may transform assertion of a right into "a bludgeon used to make trial impossible."  This, combined with the untimely assertion of the right to self-representation well into the trial, indicates that the right was not properly invoked. Under these circumstances, the trial court did not err in ascribing "constitutional primacy" to Defendant's right to counsel and in denying his request to proceed pro se. See *Frazier-El,* 204 F.3d at 559.

*Cromartie*, 2008 WL 216352 at *5-*6.

The trial court's denial of Cromartie's request to represent himself is entirely

consistent with the Sixth Circuit's holdings on the issue and does not contradict any

holding of the United States Supreme court.  Cromartie contends that the state court did

not timely grant his motion to proceed *pro se*, nor did it hold a hearing upon his motion,

thus violating *Faretta v. California*, 422 U.S. 806 (1975).  Cromartie errs.  *Faretta* says

nothing about how quickly a court must respond to a motion to proceed *pro se*, nor does

it require a hearing.  *Faretta* only requires that a court grant a timely request to proceed

*pro se* and ensure that the request be knowing and intelligent.  In the instant case, the

court granted Cromartie's motion to proceed *pro se* before trial began and engaged him in a colloquy regarding his rights before granting that motion.  *Faretta* requires no more. Cromartie's argument that any litigation occurring between his initial request to proceed *pro se* and the court's granting of that request is unsupported by any holding of the Supreme Court.

Nor does Cromartie demonstrate the state appellate court's recitation of the facts is unreasonable given the record.  Cromartie contends that he did not vacillate in his desire for counsel, contrary to the state appellate court's assertion. The record supports the state court's description of the events.[5]  *See* Transcript of State Court Proceedings ("Tr."), v. 1, Appendix to Return of Writ (Doc. No. 19), Attachment #2, pp. 169-72. Cromartie requested the return of counsel as the state court's opinion described, then he later requested to proceed *pro se* again.  It was at this point that the court denied Cromartie's request.  As already noted, this ruling was entirely consistent with Sixth Circuit caselaw and *Faretta*.

As Cromartie fails to demonstrate that the state court rulings were directly

---

[5]  Cromartie argues that it was unreasonable for the court to have called an in-chambers meeting to discuss whether Cromartie wanted the return of court-appointed counsel.  This meeting was held after Cromartie's original attorney, who had been appointed stand-by counsel when Cromartie was allowed to proceed *pro se* and was seated in the gallery, left the gallery on his own initiative during trial, approached Cromartie, and consulted with him.  Cromartie then objected to what the witness had just said.  The court then warned Cromartie about hybrid representation and retired with the parties to chambers.  In chambers, the court again warned against hybrid representation and tried to find out if Cromartie wished to continue to proceed *pro se* or wished re-appointment of counsel.  Cromartie did not answer clearly after the question had been put to him several times, but he eventually said that he wanted counsel re-appointed.  Whether any of this was unreasonable, and it does not appear to be, it certainly is not contrary to a holding of the Supreme Court.  That is the only relevant test pertinent to Cromartie's habeas petition.

contrary to a holding of the Supreme Court or demonstrate that the state courts' findings of fact were unreasonable, Cromartie cannot obtain habeas relief on this claim. Consequently, Cromartie's second ground for relief should be dismissed.

C.      Whether certain questions by the prosecutor and remarks to the jury constituted government misconduct violating Cromartie's Fifth, Sixth, and Fourteenth Amendment rights

Cromartie's third ground for relief claims that the prosecutor violated rights protected by the Fifth, Sixth, and Fourteenth when he asked Cromartie on cross-examination whether he had set fire to a motor vehicle in Mt. Vernon, Ohio and, in closing remarks, told the jury that Cromartie had attempted to burglarize a home. Cromartie also contends that the prosecutor violated his rights when the prosecutor asked the jury to consider "other acts" testimony for an improper purpose.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted).  To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)); *see also  United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins,* 209

22

F.3d 486, 529-30 (6th Cir.2000).

Prosecutorial misconduct is subject to harmless error analysis.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).  On federal habeas review, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

The state appellate court hearing Cromartie's direct appeal issued the following findings of fact and conclusions of law upon review of the state claim corresponding to this ground for relief:

{¶ 28} In his final assignment of error, Defendant argues that the State made improper remarks during cross-examination of Defendant and closing argument that denied him a fair trial.  We disagree.

{¶ 29} With respect to comments made during cross-examination and closing arguments, the test for prosecutorial misconduct is twofold: whether the comments were actually improper and, if so, whether they prejudiced substantial rights of the defendant.  *State v. Smith* (1984), 14 Ohio St.3d 13, 14; *State v. Mason* (1998), 82 Ohio St.3d 144, 161.  "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial."  *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 266.  Cross-examination may properly include all relevant matters and those related to the credibility of the witness.  *State v. Slagle* (1992), 65 Ohio St.3d 597, 605; *State v. Wade,* 9th Dist. No. 02CA0076-M, 2003-Ohio-2351, at ¶ 47.  During closing argument the State may comment on all evidence adduced at trial and the reasonable inferences that may be drawn from the evidence.  *State v. Lott* (1990), 51 Ohio St.3d 160, 165.

Cross-Examination

{¶ 30} Defendant first argues that the State improperly questioned him about an incident in which a vehicle owned by David Gregory's mother was set ablaze. Defendant maintains that he suffered prejudice regardless of the fact that the prosecuting attorney abandoned the line of questioning when instructed to do so by the trial court.  Defendant assumes that because the question was asked by the county prosecuting attorney himself, the jury must have received the impression that the allegation was true.  We disagree.

23

{¶ 31} Evidence of other acts with respect to David Gregory was properly admitted pursuant to Evid.R. 403 and 404(B).  The State's question on cross-examination related to specific, peculiar details of Defendant's conduct that could identify his motive and confirm his identity as the perpetrator in this case.  Even assuming that this line of questioning was improper, Defendant has not demonstrated that his substantial rights were affected.  We reject Defendant's assertion that we must assume that the jury abandoned its function and leant credibility to every assertion made by the State because the county prosecuting attorney conducted his cross-examination.

*       *       *       *       *

Closing Argument

{¶ 36} Defendant also alleges three instances of misconduct by the State during closing argument.  Because Defendant did not object to these statements at trial, he has forfeited all but plain error on appeal.  See *Payne,* 2007-Ohio-4642, at ¶ 22-23.  His first argument is that the State urged the jury to consider other acts evidence for an impermissible purpose.  According to Defendant, "what the state was really clearly arguing was that if [Defendant] did it before, he did it here."  As set forth in our disposition of Defendant's first assignment of error, however, the other acts evidence produced by the State was properly admitted.  During closing, the State made fair comment on this evidence, and there was no error with respect to these comments.

{¶ 37} Defendant also argues that the State improperly and "without the slightest evidence" argued that Defendant attempted to enter another home in the Sulitis's neighborhood on an evening prior to the attack.  During the direct examination of Brunswick Police Officer Jonathan Page, however, the State produced testimony that police observed a vehicle in the neighborhood at the time of the earlier attempted break-in that was consistent with the description of Defendant's rental car found on the day of the attack.  Counsel for Defendant cross-examined Officer Page on this point and argued in his own closing that this testimony should be discredited:

> "Now, [the State] brought up the witness that we all met-Gayle Marciell-on 12/30. And you recall Sgt. Page's testimony.  He called it a prowler call, and he went out to that call and noticed a vehicle.  He thought it was a Dodge Intrepid, he wasn't sure. He found no substance to the call, he told Miss Marciell that, and he was so concerned about this vehicle that he didn't note the make and model and he didn't write the best identifying characteristic-the license plate-down. * * *

> "But [the State] tells us, 'Well, then that must mean that that was [Defendant] trying to get into a home on a different street at a different

address,' even though [Defendant] is, you know, supposedly sending
items here and different items to the home and he's writing directions and
knows the address and has spent all of this time calculating all of these
things.  Folks, it can't be both ways. [Defendant] now happens to be, on
the 30th, on a different street at a different home, in an investigation that
Sgt. Page thought was so important he didn't even write a report at all."

The statements made by the State and counsel for Defendant were both
fair-albeit opposing-comments on Sgt. Page's testimony.  There is no error in this
regard.

{¶ 38} Finally, Defendant argues that the State made "a subtle comment or
complaint * * * regarding constitutional protections afforded to defendants" during
closing.  Defendant directs this court to the following statement made in rebuttal:

"And [defense counsel] made a comment in his closing argument,
something about the lifestyle, I don't recall the exact words.  But, Ladies
and Gentlemen, regardless of the lifestyle that a person has, they're
entitled to the protection of our laws, Ohio laws, just like [Defendant] has
had protection of Ohio laws, Constitutional protections, due process, to
cross-examine witnesses, subpoena witnesses, confront witnesses, his
right to counsel; he's been accorded all those protections.  And Greg
Sulitis is entitled to protection of the laws, too.  So when he made that
comment about how people act, people act in strange ways, well, people
in all relationships make wrong decisions, but that doesn't entitle the other
party to take a weapon and beat them in the head."

Defendant mischaracterizes the State's words.  Viewed in context, it is apparent
that the State did not complain about the constitutional rights afforded to a
defendant, but argued that both Defendant and Mr. Sulitis were entitled to the
protection of law regardless of their homosexual lifestyle.  There was no error
with respect to this statement.  Defendant's fourth assignment of error is
overruled.

{¶ 39} Defendant's assignments of error are overruled, and the judgment of the
trial court is affirmed.

*Cromartie*, 2008 WL 216352 at *8-*11.

Cromartie makes no effort to demonstrate that the state appellate court's findings

of fact were unreasonable or that it erred in its statement of the law.  Nor does

Cromartie make any effort to demonstrate that he was prejudiced by the prosecutor's

25

comments.

As already noted, the evidence against Cromartie was overwhelming.  Even if Cromartie were to demonstrate that the prosecutor's remarks were improper, and he does not, he would be unable to demonstrate that those remarks affected the outcome of the trial.  As Cromartie fails to show either that the prosecutor's remarks were improper or that he was prejudiced by them, Cormartie's third ground for relief should be dismissed.

IV.

For the reasons given above, the court should dismiss Cromartie's petition with prejudice.

Date:  October 28, 2009                    /s/ Nancy A. Vecchiarelli
                                           United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

26